UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>ETHAN NORDEAN,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:21-mj-195<br>)<br>) **Chief Judge Beryl A. Howell**<br>)<br>)<br>) |

**DEFENDANT NORDEAN'S REPLY IN SUPPORT OF MOTION TO LIFT STAY ON RELEASE ORDER AND MOTION FOR RELEASE FROM CUSTODY PURSUANT TO 18 U.S.C. § 3060**

Defendant Nordean, through this counsel, files this reply in response to: (1) the government's opposition to his Motion to Lift Stay on Release Order, ECF No. 17, and (2) the government's opposition to his Motion for Release from Custody Pursuant to 18 U.S.C. § 3060, ECF No. 18.  The government's opposition briefs inaccurately represent facts and the relevant case law.  Its arguments should be rejected for the following reasons.

**I.    The government has no intelligible answer to Nordean's § 3060 motion**

Nordean will begin with § 3060 which unequivocally requires his release from custody. The government's opposition simply avoids the relevant issues.  Nordean was arrested and had his initial appearance in the Western District of Washington on February 3, 2021.  It is now nearly a month later and he has not had a preliminary examination to determine whether the criminal complaint on which he was arrested makes a probable cause showing for the felony offense upon which the government's entire detention motion turns, *i.e.*, aiding and abetting the depredation of property, 18 U.S.C. § 1361.  The government has not returned an indictment.

1

That means Nordean "shall be discharged from custody or from the requirement of bail or any other condition of release . . ." § 3060(d).

The government concedes that, in the ordinary case, Nordean's analysis is correct. Gov't Opp. to Mot. for Release, p. 2. However, it says this case is "slightly more nuanced"—which somehow transforms a correct legal position into a "gotcha" motion, *id.*, p. 4—because, in a document entitled "Waiver of Rule 5(c)(3)(D) Hearing," Nordean's counsel signed a statement agreeing, in pertinent part, that Nordean "elect[s] to have [the preliminary examination] conducted in the district where the prosecution is pending." Gov't Opp. to Mot. for Release, p. 2 (quoting *United States v. Nordean*, ECF No. 11, 12-mj-67 (W.D. Wash., Feb. 8, 2021)). So, the government concludes, "The Federal Rules of Criminal Procedure can hardly be read to require Defendant's release from custody based on his having been denied a hearing that he waived, in writing." *Id.*, p. 4.

As the government knows, its analysis misses more than a few stitches. As the title of the document on which it relies makes clear, the hearing Nordean "waived" was one pursuant to Federal Rule of Criminal Procedure 5(c)(3)(D), which concerns the procedure for extradition to another federal district. By contrast, the arrested person's right to a preliminary examination hearing is separately covered by Rule 5(c)(3)(C). Of course, by electing to hold the preliminary examination "in the district where the prosecution is pending," Nordean did not consent to be held in custody an indefinite length of time beyond the 14-day limit set out in § 3060(b)(1) without a probable cause hearing to which he is entitled. The government's cites no authority for its unexamined assumption that an arrested person's election to hold a preliminary examination in another district constitutes a waiver of the relevant statutory deadline. There is none.

As this Court's Covid-19 Standing Orders make clear, the Rule 5.1 preliminary examination could have been held in this district by videoconference at any point in time. Standing Order No. 20-17 (a Rule 5.1 preliminary examination may be held by videoconference); Standing Order No. 20-92 (extending 20-17 on Dec. 17, 2020). The government offers no excuse as to why the command in § 3060 that a "preliminary examination shall be held within [the 14-day period]," can be ignored in the face of the Covid-19 Standing Orders. Indeed, the magistrate judge assigned to this case recently advised undersigned counsel in another matter that a Rule 5.1 preliminary examination could be held by videoconference and encouraged counsel to schedule one.

The government also argues that the 14-day clock was "tolled" on February 8, when the Court ordered Nordean transported to this district, until the defendant's arrival here. Gov't Opp. to Mot. for Release, p. 4. According to every court that has considered the issue, the government is wrong. For example, in *United States v. Bagios*, 2011 U.S. Dist. LEXIS 158795 (S.D. Fla. Mar. 3, 2011), where the defendant held his initial appearance in the Southern District of New York and was then transferred to the Southern District of Florida, the court held:

> Nor can this Court find language in Section 3060 justifying exclusions from the preliminary-hearing period for transfer between districts, even though Congress clearly knew how to exclude such time if it wished to do so. *See, e.g.*, 18 U.S.C. 3161(h)(1)(F) (excluding from Speedy Trial Act calculations the period of delay resulting from transportation of any defendant from another district, among other reasons). Consequently, this Court agrees with Defendant that the fourteen-day period begins upon his initial appearance, regardless of where that initial appearance occurs.

2011 U.S. Dist. LEXIS 158795, *9.

The same conclusion was also reached by the only other decision to address the issue which Nordean's counsel could locate. *See United States v. Villanueva*, 2007 U.S. Dist. LEXIS

45276, *12-13, (E.D. Wisc. June 21, 2007) (§ 3060 clock begins ticking as of the initial appearance, no matter where that might occur).

It is true that in *Bagios*, the court ultimately did not grant the arrested person's § 3060 motion for release from custody. But that decision rested on the premise that "obviously, Defendant's preliminary hearing in Florida could not occur until his arrival in the Southern District of Florida." 2011 U.S. Dist. LEXIS 158795, *11. It was for that reason that "justice require[d] the delay," in the time-limit-extending language of § 3060(c). *Id.* In contrast to the context in *Bagios*, *which was decided in 2011*, the Standing Orders of this district plainly provide that a Rule 5.1 preliminary examination could have been held by videoconference in this district at any point during the 14-day window. The government does not contend otherwise. Nor does it argue that any "extraordinary circumstances exist" that would warrant an extension to the statutorily mandated 14-day window. § 3060(c). Given the availability of videoconferencing and the Covid-19 Standing Orders, there is no such argument.

Finally, Nordean's § 3060 argument is not some technicality. While a probable cause hearing is essential in any criminal case maintained without the constitutional protections of a Grand Jury, it is particularly vital in this case. As the Court will see, the government's opposition to Nordean's Motion to Lift Stay on Release Order *makes no attempt to show the criminal complaint offers evidence sufficient to make a probable cause showing that Nordean aided and abetted the depredation of property*. And although the government has enjoyed more than twice the amount of time provided in § 3060 to return an indictment after somehow persuading a Grand Jury that its evidence makes a probable cause showing, it has failed to do so. Here, Nordean's right to test the government's evidence on which his detention is based was sorely needed. It was denied. Nor does the government offer any estimate as to how long

4

beyond the statutory limit Nordean must wait before being able to exercise his right.  Under § 3060(d), Nordean must be released from custody.

**II.     Even if Nordean's § 3060 motion is denied, the stay should be lifted**

The government's opposition misrepresents several recent rulings of this Court on the issue of whether an offense under 18 U.S.C. § 1361 constitutes a "crime of violence" in 18 U.S.C. § 3142(f)(1)(A).  Gov't Opp. to Motion to Lift Stay on Release Order, pp. 3-8.  As shown below, a depredation-of-property crime does not satisfy § 3142(f)(1)(A).  But the Court need not reach that issue, as the government does not even defend its depredation charge on the merits.

**A.     The complaint does not make out probable cause for a § 1361 offense**

Nordean's Motion to Lift Stay showed that the criminal complaint alleges that, on January 6 in front of the Capitol Building, Nordean spoke into the ear of a man who later climbed through a window of Congress.  Whether Nordean was commenting on the weather, the size of the crowd, the action in front of them, or what's for lunch, the complaint does not plead.  The complaint then alleges that the window had previously been broken by a third man.  This does not come close to constituting probable cause that Nordean aided and abetted the depredation of property.  *Rosemond v. United States*, 572 U.S. 65, 76 (2014) (aiding and abetting offense requires proof that defendant took some action to facilitate the offense).

*The government's 24-page opposition does not rebut this anywhere*.  It does not address *Rosemond*.  It simply assumes the above facts somehow state an aiding-and-abetting offense and then leaps right into the question of whether this nonclaim. . . constitutes terrorism.  Gov't Opp. to Motion to Lift Stay on Release Order, pp. 2-4.  But if the complaint does not make out a probable cause showing that Nordean aided and abetted the depredation of property, then of course there is no predicate for detention under 18 U.S.C. § 3142(e)(3)(C) and the definition of

"Federal crime of terrorism" in 18 U.S.C. § 2332b(g)(5)(B). Nor is there a predicate for a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A). The stay should be lifted on that argument forfeiture alone.

### B. Depredation of property is not a "crime of violence"

The government represents that in another case involving the January 6 incident, "Judge Mehta ruled from the Bench that the destruction [sic] of property, in violation of 18 U.S.C. § 1361 is a crime of violence." Gov't Opp. to Motion to Lift Stay on Release Order, pp. 3-4 (citing *United States v. Watkins*, 21-cr-23 (Feb. 26, 2021)). That is not the case. Although Judge Mehta did not release Watkins, he did not find that a depredation of property offense constitutes a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A). To the contrary, he expressed serious skepticism that depredation satisfies § 3142(f)(1)(A).[1]

Even if the government were not misrepresenting the Court's ruling, it is wrong on the merits. Nordean's Motion to Lift Stay provides many examples of convictions under § 1361 which do not involve "the use, attempted use, or threatened use of physical force," 18 U.S.C. § 3156(a)(4), ranging from spray painting, digging in Native American burial grounds, pouring blood and ashes in various federal properties including the Capitol and nuclear missile sites, and pilfering federal timber. The government does not contest that the "categorical approach" applies to the question of whether a given offense is a "crime of violence" under § 3142(f)(1)(A). *See United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999). Because it cannot explain how

---

[1] See Josh Gerstein (@joshgerstein), Twitter (Mar. 3, 2021, 5:45 pm), https://twitter.com/joshgerstein?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (government's "description [in *Nordean*] of how Judge Mehta ruled last week in Jessica Watkins case not consistent w/ my memory of hearing. I think he took a pass on whether depredation is—by its nature—a crime of violence. Indeed, he seemed quite skeptical of the idea.").

the aforementioned examples involve the use of "physical force," it has failed to show that depredation of property is a "crime of violence" under the categorical approach.

The Court will also notice that although § 3142(f)(1)(A) requires a crime of violence "for which a maximum term of imprisonment of 10 years or more is prescribed," the government's opposition fails to show where its complaint pleads that the "damage" to government property *attributable to Nordean* exceeds the $1,000 threshold which would make the § 1361 charge a felony for which he could be incarcerated for 10 years. That is because the complaint itself fails to plead that element and only vaguely alleges the "damage" Nordean is said to have caused.

C. **The government does not even address the § 3142(e)(3)(C) standard**

Just as the government offers no argument that its complaint pleads probable cause of an aiding and abetting property depredation offense, it likewise provides no explanation supporting its alternative detention theory—i.e., that the depredation offense, for which it makes no probable cause showing, is a "crime of terrorism" under 18 U.S.C. § 2332b(g)(5)(B), triggering the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. . ." 18 U.S.C. § 3142(e)(3)(C).

The government's argument that a picture showing Nordean in an "exchange" with a man who climbed through a congressional window constitutes "terrorism" is quite simply this: "Defendant is incorrect." Gov't Opp. to Motion to Lift Stay on Release Order, p. 2. The Court will search in vain through the statutory citations and case law confusingly recycled from other January 6 cases for some *factual explanation* as to how Nordean's "verbal exchange" somehow shows he committed a § 2332b(g)(5)(B) offense—*any of them.* And, again, just as with its § 3142(f)(1)(A) argument, the government fails to show that the "§ 2332b(g)(5)(B) offense"

7

carries "a maximum term of imprisonment of 10 years or more," 18 U.S.C. § 3142(e)(3)(C), because the complaint does not allege whether the charged depredation offense resulted in damage exceeding the $1,000 felony threshold.

**D.     The government's "new evidence" does not change the § 3142(g) analysis**

1.     *Nature and circumstances of the offense*

The Court will again notice that in discussing the "nature and circumstances of the offense" *the government does not actually address any of the charged offenses*. Gov't Opp. to Motion to Lift Stay on Release Order, pp. 9-11. Instead, the government relies on this Court's detention order in *United States v. Chrestman*, 21-MJ-218 (Feb. 26, 2021) and flatly states the same outcome should result in this case, presumably because both defendants belonged to the same political group, the Proud Boys.

To the contrary, the Court's detention factors in *Chrestman* show why lifting the stay on Chief Magistrate Judge Tsuchida's release order is appropriate. Indeed, not a single one of the factors the Court relied on there is present in Nordean's case. Unlike in *Chrestman*,

(1) the complaint pleads no evidence of a plan on Nordean's part to commit a crime inside the Capitol Building;

(2) Nordean did not carry a weapon, unlike Chrestman who carried an axe handle;

(3) Nordean did not threaten, abuse or assault the police, unlike Chrestman, who yelled at them, "You shoot and I'll take your fucking ass out!"—a threat made more real given that Chrestman was carrying a weapon;

(4) Nordean did not commit *any action* to facilitate property depredation, unlike Chrestman who used his axe handle to obstruct a barricade;

8

(5) Chrestman was charged with five serious felony offenses, including threatening to assault a police officer, whereas Nordean is charged with two misdemeanors and one or two felonies, for which the complaint does not even plead probable cause; and

(6) Chrestman attempted to conceal or destroy evidence, unlike Nordean.

*United States v. Chrestman*, ECF No. 23, 21-MJ-218 (Feb. 26, 2021).

The government represents that, on January 6:

> Defendant—dressed all in black, wearing a tactical vest—*led the Proud Boys through the use of encrypted communications* and military-style equipment, and *he led them with the specific plans to: split up into groups, attempt to break into the Capitol building* from as many different points as possible, and prevent the Joint Session of Congress from Certifying the Electoral College results.

Gov't Opp. to Motion to Lift Stay on Release Order, pp. 10-11 (emphasis added).

One problem with this wild assertion is that the government provides no factual evidence in support of it. But there is a second and more fundamental problem. The government's claim is a demonstrably false representation. It states that Nordean "led the Proud Boys through the use of encrypted communications. . ." What the government is not informing the Court is that, throughout the day of January 6, *Nordean's mobile phone was without power*. While the attorneys who made this representation to the Court may not have known that fact, the Special Agents who apparently conducted a search of his phone certainly should have and likely did.

The government cites a laundry list of Nordean's social media posts before and after January 6. Gov't Opp. to Motion to Lift Stay on Release Order, pp. 11-14. Not a single one of these—often featuring vague comments about "patriots" and the "stolen election"—shows that Nordean planned or intended to commit a crime on January 6. As for Nordean's requests for "protective gear and equipment," the government omits the explanation Nordean has publicly posted, on dozens of occasions, that he sought these items—for events before and after January

6—because multiple members of his group were stabbed at an event earlier in the year. Indeed, Nordean and others in this group have been wearing this protective gear for years—long before the 2020 election and the January 6 incident. For example, here is a photograph depicting Nordean and others wearing "protective gear" in August 2019 in Portland, Oregon:[2]



The government cites not a single piece of evidence indicating this "equipment" was connected to any plan to commit a crime inside Congress on January 6. After searching Nordean's home, his computers, his phone, his social media and his personal effects, the "new evidence" cited by the government in support of the arrest it made nearly a month ago is that a Baofeng radio was found in his home. Gov't Opp. to Motion to Lift Stay on Release Order, p. 15 n. 5.

---

[2] Photograph and date available at: https://www.kuow.org/stories/extremist-groups-popping-up-left-and-right-in-pacific-northwest-law-enforcement-officials-say.

Other photographs showing Nordean wearing "protective equipment" long before the January 6 incident are available at:

(1) https://www.wweek.com/news/city/2021/02/17/before-storming-the-capitol-trump-loyalists-practiced-by-invading-portland/
(2) https://twitter.com/arunindy/status/1162812931538468864?s=19
(3) https://twitter.com/josh_emerson/status/1013421708739596288?s=19

10

The government neglects to inform the Court of something significant, of which the government is surely already aware. Nordean did not obtain the Baofeng radio until *after* January 6. So: it is not new evidence of his "use of communications equipment to lead the invasion." Here is photographic proof:



In a section entitled "Defendant Takes Leadership of Proud Boys' January 6 Activities"—which reads like it is recycled from other matters involving Proud Boy defendants—the Court will notice that the government scarcely references any action by *Nordean specifically*. Gov't Opp. to Motion to Lift Stay on Release Order, pp. 15-18.

That is perhaps because there is evidence positively showing that Nordean did not endorse, much less lead, an invasion of the Capitol Building. *See* WSJ Video, Jan. 26, 2021, available at: https://www.wsj.com/video/video-investigation-proud-boys-were-key-instigators-in-capitol-riot/37B883B6-9B19-400F-8036-15DE4EA8A015.html (depicting Nordean "chastising" a Proud Boy when the man said he wanted to invade the Capitol).

2.   *The weight of the evidence*

The government conclusorily states that "the weight of the evidence against Defendant is overwhelming." Gov't Opp. to Motion to Lift Stay on Release Order, p. 19. This is an insult to

11

the intelligence of anyone reading the government's filing. The government does not bother to engage with the aiding and abetting legal standard, fixed by the Supreme Court. It does not attempt to show what *action* Nordean allegedly took to "depredate" the sole piece of federal property alleged in the complaint: a window of Congress. It makes sweeping, vague allegations concerning intricate plots to invade Congress—and then offers no factual evidence to support the allegation *as to Nordean* beyond citing inane social media posts about patriots, the election, and fundraising.

        3.    *The government's risk-of-flight argument is bizarre*

The government represents that, during the search of Nordean's home, law enforcement agents discovered a valid U.S. Passport "issued to someone else who looks like the Defendant." Gov't Opp. to Motion to Lift Stay on Release Order, p. 21. To show the Court how misleading this representation is, Nordean provides pictures of the man in the passport (brown hair, slim face) and Nordean (blond hair, round face), respectively:

 

As the government knows and as the Court can now see for itself, the passport found in Nordean's home was not "issued to someone else who looks like the Defendant." The government then represents that Nordean "possessed" the other man's passport and that agents found it "on a clothes dresser on Defendant's side of the bed." Gov't Opp. to Motion to Lift Stay

12

on Release Order, p. 21.  That is also a misleading representation.  The passport was not in the possession of Nordean, but his wife.  Agents did not find the passport on "Defendant's side of the bed," but instead inside a jewelry box.  The jewelry box is not Nordean's possession.  It belongs to his wife.

Of these facts, the government was aware, or should have been aware, before it made misleading representations to multiple courts concerning the defendant's risk of flight.

Dated: March 1, 2021                      Respectfully submitted.
                                          DAVID B. SMITH, PLLC

                                          /s/ David B. Smith
                                          David B. Smith (D.C. Bar No. 403068)
                                          108 N. Alfred St.
                                          Alexandria, VA 22314
                                          Phone:(703)548-8911
                                          Fax:(703)548-8935
                                          dbs@davidbsmithpllc.com

                                          Nicholas D. Smith (Va. Bar No. 79745)
                                          7 East 20th Street
                                          New York, NY 10003
                                          Phone: (917) 902-3869
                                          nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 1st day of March, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system and the Case Administrator Brittany Bryant, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

    Jim Nelson
    Assistant United States Attorney
    555 4th Street, N.W., Room 4408
    Washington, D.C. 20530
    (202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*
